UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 5:13-CR-35-KKC-REW |
| v. | ) ) ) | RECOMMENDED |
| MICHAEL MEANS, | ) ) | DISPOSITION |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, on referral (DE 35), considers Defendant Michael Means's reported violations of supervised release conditions. This District originally convicted Means of theft from a federally licensed firearm dealer in September 2013. DE 28 (Judgment). Judge Caldwell sentenced Means to a 24-month prison term, followed by 3 years of supervised release. *Id.* The Judgment also included restitution in the amount of $68,657.88 and established payment mechanics.[1] *Id.* Just over two years after his August 2015 release, USPO Glenn Collins reported Means's failure to pay restitution and report monthly as directed. DE 32 (Report). In July 2017, Officer Collins verbally reprimanded Means and warned that future noncompliance would likely

---

[1] The restitution condition, in full, states:

> Restitution in the amount of $68,657.88 shall be due immediately. The defendant shall pay restitution to the victim of this case. The payments will be $25.00 per quarter (if incarcerated) unless the defendant is employed through UNICOR Prison Industries, then the quarterly payments shall be $60.00 per quarter. Any remaining unpaid balance upon release shall be set by subsequent orders of the Court.

DE 28, at 4.

result in harsher repercussions; ultimately, Judge Caldwell approved the August 2017 USPO recommendation to continue Defendant's supervised release. *Id.*

Most recently, the USPO issued a Supervised Release Violation Report and secured a warrant from the undersigned on January 2, 2018. *See* DE 37 (Sealed Violation Report); DE 40 (Warrant). On January 4, 2018, Defendant appeared before the undersigned for initial proceedings under Federal Rule of Criminal Procedure 32.1. DE 39 (Minute Entry Order). The Court, upon referral from the Chief Judge, set and conducted a final hearing. *See* DE 42 (Minute Entry Order).

The January 2018 Report alleges three violations: that since Collins's August 2017 Report, (1) Means failed to make any restitution payments or (2) complete required monthly reports, and (3) failed to pay restitution as USPO directed. DE 37, at 3. At the final hearing, the United States withdrew allegations one and three.[2] Thereafter, Defendant (under oath) competently, knowingly, voluntarily, and intelligently stipulated to violation two as described in the January Report, and the Court heard statements and arguments as to the proper sentence (as well as Means's allocution). DE 42.[3] Means's stipulation, the Report, and the underlying record established the violative conduct under Rule 32.1 and § 3583.[4] Accordingly, the Court finds that Means violated the reporting condition[5] of his supervised release as described in the Report.

Moving to the effect of the violations, the Court has evaluated the full record, including

---

[2] The Court noted the absence of a record order establishing Means's post-release payment schedule, as the restitution condition anticipated. The United States acknowledged the lack and determined to rest on the failure to report allegation.

[3] The Court expressly informed Defendant of his reserved right of allocution before the District Judge. The Court afforded Means all rights due under Rule 32.1 and 18 U.S.C. § 3583.

[4] The proof standard is a preponderance of the evidence, *see* 18 U.S.C. § 3583(e)(3), which Means's sworn stipulation and the prior admission to USPO, as reported, obviously satisfy.

[5] Standard condition two requires the Defendant to "report to the probation officer in a manner and frequency directed by the court or probation officer." DE 28, at 3. The obligation is monthly.

the original conviction, the previously alleged violations, the Presentence Investigation Report, the current Violation Report, and the content of the final hearing. The Court has considered all of the § 3553 factors imported into the § 3583(e)(3) analysis.

Under § 3583, a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Means's conviction is for a Class C Felony. 18 U.S.C. §§ 922(u), 924(i)(1), 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two (2) years of imprisonment. *Id.* at § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1(a), the second violation qualifies as a Grade C violation. Given Means's criminal history category of I (the category at the time of the conviction), and the Grade C violation, Defendant's range, under the Revocation Table of Chapter 7, is 3-9 months.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the current and any prior violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *Id.* § 3583(b). Given the original 3-year maximum, the

3

Court could potentially reimpose a supervised release term of 36 months less any revocation term. *See* 18 U.S.C. § 3583(h).

The Court has carefully weighed the nature and circumstances of the violation[6] and Defendant's particular history and characteristics. Defendant is the primary caregiver for his fiancée's daughter, obtained his GED in prison, is currently enrolled in college classes, and appears to be making honest efforts to reform his life. Though Means's recent mistakes are concerning, the Court perceives no dangerous or contumacious disregard for imposed conditions. Defendant claims he is physically unable to work due to a back injury; the Court finds no reason to doubt that contention. Defendant has made a payment toward his restitution and endeavored to catch up on his missed reports since the January 4, 2018, initial appearance. *See, e.g.*, DE 41 (Restitution Payment Receipt). The USPO reports that Means successfully complied with all the terms of his interim release and, outside the reported violations, has been a compliant supervisee.

All told, considering the entire record, the Court finds that the hearing-discussed condition modifications—placing Means on 30-days' home detention, requiring 20-hours' community service, and establishing an explicit restitution payment framework—are appropriate. The current established (and, to Defendant's credit, candidly admitted) violation does not reflect any particular need for a revocation term. The Court would have been reluctant to jail Means for an inability to pay, and the accompanying failures to report do not, this time, signal any flagrant disregard for Court authority. Ultimately, the circumstances surrounding Defendant's history and

---

[6] The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). This observation does not detract from but rather shapes the Court's analysis of the statutory factor encompassing offense conduct.

family and documented efforts at reform militate against revocation. Means, outside of the originating firearm theft, has minimal criminal and violative history. Nothing in Means's conduct suggests he presents a danger to the public—in fact, Means appears to be making positive societal steps. Nonetheless, the record and history indicate that some repercussion is necessary to deter future violations, and to impress on Defendant the gravity and consequences of violating Court-imposed conditions. Means must not move forward ignoring the purpose underlying the restitution owed, nor the accompanying reporting requirement. Means's crime led to a real and substantial victim's loss; the Court does not take that lightly, and, if he wishes to avoid incarceration, nor should Means.

Therefore, for all the reasons stated, based on the violation found, and after considering all applicable factors, the Court **RECOMMENDS** that the District Court:

(1) Find violation number two, proven as alleged;

(2) Dismiss violations one and three, as withdrawn;

(3) Per § 3583(e)(2), continue Defendant's supervision term on the all conditions and for the duration previously imposed, with the following modifications:

    a. Defendant is placed on **home detention for 30 days**. Meaning that Defendant should remain within the 4 walls of his home at all times, except when the USPO pre-approves him leaving, on a set schedule, for any reason the USPO deems appropriate (such as legitimate family reasons, to meet with his lawyer, to go to medical appointments, for schooling, to complete the below-imposed community service, etc.). The only exception is in the case of a true medical emergency, requiring Defendant's, or a member of his household's, transportation to a local hospital via ambulance. In such a circumstance, he may go without leave, but he still must contact the USPO as soon as possible thereafter to take further instruction.

    b. Defendant shall promptly complete **20 hours of community service**, on a schedule and at opportunities that the USPO sets and coordinates.

> c. Defendant, beginning with February 2018, shall be placed on a monthly payment schedule. To start, Defendant shall pay a **minimum of $50 per month** toward his restitution obligation, subject to the USPO investigating Defendant's family situation (including total household income) and Defendant's disability benefit receipt status. This minimum amount is subject to adjustment as Defendant's circumstances change and warrant. The USPO shall keep the Court apprised of Means's compliance, any changes, and any recommended modification of payment terms. Each month, starting February 2018, shall include the obligation.

The Court carefully took the views of the United States and the defense into account in reaching this result. The Court finds that the sentence is consistent with the seriousness of the underlying conduct and is hopeful that the modifications in Means's release conditions lead him to make better decisions and take greater care regarding his restitution and reporting obligations. Although below the Revocation Table range, the recommendation is for a sentence sufficient but no greater than necessary to meet the statutory purposes. The home detention and community service components fairly approximate the effect of the range. Further, continuing Defendant on his initial supervised release term will permit apt court supervision over Defendant's ongoing compliance efforts.

The Court warns Means that any next time for these or other violations will not receive such leniency. Means must follow all conditions, including required paperwork, during the balance of his term.

Defendant's right of allocution under Rule 32.1 persists, as reflected in the record. Any waiver should comport with the Court's standard waiver form, which the Court provided to defense counsel at the final hearing. Absent waiver, the District Judge will set the matter for a hearing to include allocution.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this

recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Within 14 days of the date of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 19th day of January, 2018.



Signed By:
*Robert E. Wier* REW
United States Magistrate Judge